Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modification.
On 1 May 2000 defendants filed a motion for a new hearing before the Full Commission at the time of the hearing on appeal. By Order issued 17 May 2000 by Commissioner Thomas J. Bolch, this motion was held in abeyance until consideration by the Full Commission at the oral arguments. For the reasons stated in Findings of Fact 1 and 25 below, defendants motion is DENIED.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter.
2. The parties are unable to agree whether an employer-employee relationship existed between plaintiff and Moores BP Station, Bill Moores Real Estate, Billy G. Moore, Inc. and/or Billy G. Moore individually.
3. Defendants have denied liability and plaintiff has not received any benefits, either compensation or medical.
4. The medical records of plaintiff may be received into evidence, without need for further authentication or verification, including records from Wilson Orthopaedic Surgery and Neurology Center, P. A., Kurtz Chiropractic Center and Johnston Memorial Hospital.
5. Plaintiffs 1996 IRS W-2 Form may be received into evidence without further authentication or verification.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. This matter was set for hearing before Deputy Commissioner Taylor in Benson on 13 January 1999. After completion of the Pre-Trial Agreement in this matter, defense counsel contacted the Deputy Commissioner and requested a continuance on behalf of his client. Defense counsel was informed by the Deputy Commissioner that a continuance would not be granted. Thereafter, defense counsel contacted the Deputy Commissioner indicating that defendant wished to retain other counsel. Defense counsel was informed at that time that he would be allowed to withdraw if the defendant wished to seek other counsel but that a continuance would not be granted. On 11 January 1999, defense counsel, Mr. Leon Lucas, submitted a motion to withdraw as counsel. Mr. Lucas was informed and was requested to inform Defendant Billy Moore that the motion to withdraw would be granted but that the hearing would proceed as scheduled. Mr. Moore had previously contacted the Deputy Commissioners office with a request that the case be continued. Mr. Moore was told that the case would not be continued and that he needed to discuss this issue with his attorney. Following the withdrawal of defense counsel, Mr. Moore again contacted the Deputy Commissioners office requesting that the case be continued and was again told that the case would not be continued and that the hearing would be held as scheduled. On the day of the hearing, plaintiff and his attorney appeared before Deputy Commissioner Taylor at the appropriate time. Defendant Billy Moore failed to appear in spite of repeated instructions to appear because the case would not be continued. After waiting 30 minutes for defendant Billy Moore to appear, the deputy commissioner proceeded to hear evidence from plaintiff.
2. Plaintiff is a 47-year-old male born 24 June 1952. He became employed with defendant Billy Moore in October 1996.
3. Plaintiff worked for defendant Billy Moore at Moores BP, Bill Moores Real Estate, and at a tobacco warehouse owned by Billy Moore. Plaintiff was paid by check from Moores BP. Plaintiff reported to work each day at Moores BP Station. However, renters from defendant Billy Moores rental business, Bill Moores Real Estate, called the BP station and requested that plaintiff performed certain services. Two or three times a week plaintiff performed work at Moores BP store.
4. Plaintiff performed various duties for Billy Moore. He remodeled trailers and repaired their floors and ceilings for Bill Moores Real Estate, stocked the cooler in the BP store, worked at the grill in the store, and cut grass at the BP store and at Bill Moores Real Estate rental properties. Plaintiff also performed work for defendant Billy Moore at his residence and worked at a warehouse owned by Billy Moore in Wilson putting in a wall.
5. Plaintiff worked on a regular basis with at least five other employees: Gloria, who ran the cash register at the BP station and cooked hot dogs, evicted tenants from the rental property and cut grass at the store; Sandra, who performed the same duties as Gloria but did not cut grass; Jimmy, who performed maintenance work on the rental properties and ran the BP store at night; Keith, who cut grass at the rental properties and the BP station as well as defendants house and cleaned defendants pool and performed maintenance work on the trailers; and an African-American man whose name plaintiff was unable to remember who performed various duties.
6. Plaintiff worked for defendant Billy Moore at his various businesses six days a week or more from approximately 7 a.m. to 6 p.m. and performed 45 to 66 hours a week earning approximately $250.00 per week. Plaintiff also rented living space from defendant Billy Moore and that money was deducted from his check. After plaintiffs accident, he was evicted from his home by defendant Billy Moore, who also obtained a judgment in court against plaintiff for non-payment of rent. After plaintiff was evicted from his home, he lived "on the street for approximately three weeks.
7. On or about 25 October 1996, plaintiff had a scheduled day off. However, defendant Billy Moore, called plaintiff and instructed him to get a jack and fix the roof of his barn. Plaintiff and his wife went to Billy Moores house to get the jack to perform this task. When plaintiff lifted the jack which weighed approximately 75 pounds, he felt something pull and experienced pain in his back. Plaintiff put the jack in the back of his truck, went to the BP store and informed defendant Billy Moore that he had hurt his back. Plaintiff thereafter attempted to repair the the roof of the barn, but he had to stop work at approximately 1:00 p.m because of continuing back pain. At that time, plaintiff informed defendant Billy Moore that he had stopped working because his back was hurting. Plaintiff informed defendant Billy Moore that he needed to see a doctor, and defendant Billy Moore instructed him to go to the emergency room.
8. Plaintiff presented to the emergency room the next day, 26 October 1996, and was released to apply ice to the lower back and elevate his legs and was given medication. Plaintiff returned to work on Monday but was unable to perform his job duties and informed defendant Billy Moore of his inability to perform certain tasks because of pain.
9. Plaintiff continued to experience pain and began dragging his leg. Plaintiff requested that defendant Billy Moore provide medical care, and defendant informed plaintiff that he should go to social services because defendant Billy Moore did not have workers compensation insurance.
10. By 2 January 1997, plaintiff was unable to pick up his right leg and had to drag it. He was also unable to lift his arms. On that date, when defendant Billy Moore requested that plaintiff fix a roof, plaintiff indicated that he had to go the doctor. Plaintiff presented again to the emergency room on 27 December 1996, and was given additional pain medicine and instructed to follow-up with an orthopedic specialist.
11. Plaintiff last worked for defendant Billy Moore on 2 January 1997.
12. Plaintiff presented to Dr. Michael J. Kushner of Wilson Orthopaedic Surgery and Neurology Center, on 13 February 1997. Plaintiff gave a history of lifting the jack and hearing a pop and feeling immediate pain. Plaintiff complained of experiencing constant pain in his low back with pain shooting down the left leg into the ankle and foot numbness. Plaintiff was diagnosed with lumbar injury and lumbar radiculopathy.
13. On 13 March 1997, plaintiff presented to a chiropractor, Dr. Collin G. Kurtz. Plaintiff gave a history to Dr. Kurtz of the jack lifting incident and subsequent back pain and complained of moderate to severe low back pain from his low back into his hip and down his left leg to the top of his foot. Plaintiff also complained of some upper back and neck pain. Plaintiff was diagnosed with acute traumatic sprain or strain injury of the lumbosacral spinal region, lumbosacral spondylolisthesis, lumbar radiculopathy, facet syndrome, lumbar segmental syndrome and myofascitis lumbar spinal musculature. Plaintiff was treated by Dr. Kurtz on two occasions and showed an improvement of his symptoms, including decreased pain in the low back, increased range of motion, and decreased pain intensity, frequency and duration.
14. An MRI on 1 April 1997 disclosed extensive L4-5 disc protrusion. On 20 June 1997, plaintiff presented again to Dr. Kushner improved with "some low back pain. On 20 June 1997, Dr. Kushner indicated that plaintiff could return to work.
15. On 1 August 1997, plaintiff moved to Pine Level, North Carolina, in order to obtain employment and on that date became employed with Massengail at a wage of $250.00 per week.
16. Defendants failed to purchase workers compensation insurance to cover plaintiff and defendants other employees.
17. Moores BP and Bill Moores Real Estate was owned and operated by defendant Billy G. Moore, and he had the ability to secure workers compensation insurance.
18. Billy G. Moore, Inc., was formerly a North Carolina corporation but was administratively dissolved by the State of North Carolina on 12 April 1994 following a suspension on 30 October 1987 for failure to file an annual report.
19. On or about 25 October 1996 and at all relevant times, defendants regularly employed three or more employees.
20. On or about 25 October 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when he sustained a specific traumatic incident of the work assigned.
21. As a direct and proximate result of his compensable injury by accident, plaintiff was unable to engage in physical activities required by his former job or any other job from 2 January 1997 through and including 1 August 1997.
23. Plaintiff reached maximum medical improvement on 20 June 1997, and no rating has yet been assigned for any permanent disability.
24. As a direct and proximate result of his 25 October 1996 compensable injury by accident, plaintiff has incurred medical expenses.
25. After being provided proper notice, defendants refused to participate in and failed to appear at the hearing of 13 January 1999.
26. Plaintiff earned an average weekly wage of $250.00
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 25 October 1996, defendants regularly employed three or more employees in the same business or establishment and, therefore, are subject to the provisions of the Workers Compensation Act. G.S 97-2(1).
2. An employer-employee relationship existed between plaintiff and defendants on 25 October 1996 and at all relevant times. G.S. 97-2(1).
3. Defendants were uninsured for workers compensation on 25 October 1996 and at least through and including 2 January 1997, and were not in compliance with G.S. 97-93 during that period. G.S. 97-93.
4. Plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendants on or about 25 October 1996. G.S. 97-2(6).
5. As a direct and proximate result of his 25 October 1996 compensable injury, plaintiff sustained a low back injury and lumbar radiculopathy.
6. As a direct and proximate result of his 25 October 1996 compensable injury, from 2 January 1997 through and including 1 August 1997, plaintiff was incapable of earning wages which he was receiving at the time of his injury at the same or in any other employment. G.S. 97-29.
7. Plaintiff reached maximum medical improvement on 20 June 1997 but no rating has yet been assigned. G.S. 97-31.
8. Plaintiff earned an average weekly wage of $250.00, yielding a compensation rate of $166.68. G.S. 97-2(5).
9. As a direct and proximate result of his 25 October 1996 compensable injury, plaintiff is entitled to payment of total compensation at the rate of $166.68 from 2 January 1997 through and including 1 August 1997. G.S. 97-29.
10. Defendants are responsible for payment of all medical treatment rendered to plaintiff by Johnston Memorial Hospital, Wilson Orthopaedic Surgery and Neurology Center (Dr. Kushner), and Kurtz Chiropractic Center, as that treatment was reasonably necessary to effect a cure, lessen the period of disability, and provide relief to plaintiff. G.S.97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay total compensation to plaintiff at the rate of $166.68 for the period beginning 2 January 1997 through and including 1 August 1997.
2. A reasonable attorneys fee of 15% of the compensation due under Paragraph 1 of this Award is approved for plaintiffs counsel and shall be deducted from that sum and paid directly to plaintiffs counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury.
4. Defendants shall bear the costs.
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/____________ THOMAS J BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
RCR:db